**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**WILLIAM HADIX,**

        **Plaintiff,**                       **CIVIL ACTION NO. 16-cv-10173**

        v.                                   **DISTRICT JUDGE PAUL D. BORMAN**

**MICHIGAN DEPARTMENT**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**OF CORRECTIONS, et al.,**

        **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff William Hadix,[1] a prisoner at the Lakeland Correctional Facility in Coldwater, Michigan, filed this *pro se* matter under 42 U.S.C. § 1983 and the Michigan Government Tort Liability Act, Mich. Comp. Laws 691.1407 ("GTLA"), against the Michigan Department of Corrections ("MDOC") and four MDOC employees: Inspector Linda Beckwith, Assistant Resident Unit Supervisor ("ARUS") Sarah Springer-Hill, and two Corrections Officers ("CO"), Mark House and Joel Robinson.[2]  (Docket no. 1.)  He sues Inspector Beckwith, ARUS Springer-Hill, CO House, and CO Robinson in their personal and official capacities, alleging that they violated his Eighth Amendment rights and were grossly negligent in failing to protect him from physical and sexual abuse by his cellmate; specifically, by refusing to allow him to change cells despite his repeated complaints.  (*Id.* at 1, 3-6.)  He alleges Defendant MDOC was grossly

---

[1] Plaintiff's name appears in his Complaint as "William Hadix."  (Docket no. 1.)  In his Motion to Stay Proceedings Pending Discovery (docket no. 20), Plaintiff's name is spelled "William Haddix."  Defendants also identify Plaintiff as "William Haddix" in their pleadings.  (Docket nos. 14, 21.)

[2] Plaintiff identified CO Robinson as "Roberson" in his Complaint.  (Docket no. 1.)  He was later identified as Joel Robinson.  (Docket no. 22 at 3.)  As of the date of this writing, he had not been served with the Complaint.  The undersigned will refer to him as Joel Robinson, as that appears to be his actual name.

1

negligent in failing to enforce the Prison Rape Elimination Act, 42 U.S.C. §§ 15601-15609. (*Id.* at 5.) Plaintiff seeks punitive and compensatory damages against the individual defendants, and asks the Court to enjoin Defendant MDOC from "further refusal(s) to change room assignments." (*Id.* at 6.)

Before the Court is Defendants' Motions for Summary Judgment (docket nos. 14, 28), and Plaintiff's Motion to Stay Proceedings Pending Discovery. (Docket no. 20.) Defendants filed a Response to Plaintiff's Motion to Stay. (Docket no. 21.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 6.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation.

## I. RECOMMENDATION

For the reasons that follow, the undersigned recommends that Defendants' Motions for Summary Judgment (docket nos. 14, 28) be **GRANTED**, and that Plaintiff's Motion to Stay Proceedings Pending Discovery (docket no. 20) be **DENIED**. Therefore, the undersigned recommends that this matter be dismissed in its entirety.

## II. REPORT

### A. Factual Background

Plaintiff claims he was physically and sexually abused by his cellmate while he was imprisoned at the Gus Harrison Correctional Facility in Adrian, Michigan. (Docket no. 1 at 3-5.) According to his Complaint, his cellmate began threatening him in January 2013. At the end of February 2013, Plaintiff informed Defendant CO House that he feared for his safety, but Defendant CO House allegedly responded by telling Plaintiff, "you['re] not moving, so you work it out." (*Id.* at 3.) Plaintiff believes Defendant CO Robinson then told Plaintiff's cellmate that

Plaintiff wanted to change cells, which prompted Plaintiff's cellmate to begin physically assaulting him. Following the first assault, in March 2013, Plaintiff claims that he filed a grievance against Defendant CO Robinson and also requested a room change from Defendant ARUS Springer-Hill, but nothing was done. In April, Plaintiff allegedly wrote to Defendant Inspector Beckwith to request a room change, but he was still not moved. (*Id.* at 4.) A few days later, in mid-April, Plaintiff's cellmate allegedly forced Plaintiff to perform oral sex on him. Plaintiff alleges that he was forced to perform oral sex on his cellmate two more times, on April 28 and May 8, 2013. (*Id.*).

On May 12, 2013, Plaintiff left his cell and told Defendant CO House about the alleged sexual assaults. His cellmate was then placed in segregation, and Plaintiff returned to his cell until he could be transferred to the Lakeland Correctional Facility, on May 15, 2013. (*Id.* at 5.) Plaintiff alleges that with his assistance, the Michigan State Police pursued criminal charges against his cellmate; however, his cellmate was allowed to plead guilty to disorderly conduct, and all other charges were dropped. (*Id.*)

Plaintiff filed a Step I grievance against Defendants Inspector Beckwith, ARUS Springer-Hill, CO House, and CO Robinson relating to the physical and sexual assaults on January 30, 2015. (Docket no. 14-3 at 8.) He claimed that they acted unprofessionally, failed to protect him from "abusive/sexual prisoner," and failed to "investigate and or prevent assault." (*Id.*) The Step I grievance was denied for being untimely. (*Id.* at 9.) Plaintiff appealed the denial to Step II and Step III, but both appeals were rejected because the original Step I grievance was untimely. (*Id.* at 5-7.) Plaintiff's Step II appeal had additional procedural defects, for example he failed to attach the Step I response to the appeal. (*Id.* at 7.)

3

Plaintiff filed the instant Complaint on January 15, 2016. He contends that Defendant MDOC is liable under the GTLA for its gross negligence in failing to enforce the Prison Rape Elimination Act, 42 U.S.C. §§ 15601-15609, and asks that Defendant MDOC be enjoined from refusing to grant Plaintiff's requests for room changes in the future.[3] (Docket no. 1 at 5.) He contends that the individual defendants are liable under the GTLA for gross negligence, and under 42 U.S.C. § 1983 for violating his Eighth Amendment rights; specifically, for their "failure to protect" and "deliberate indifference to protection needs." (*Id.* at 5-6.) Against the individual defendants, he seeks "punitive, declaratory and compensatory damages in excess of . . . $50,000.00," and "any other appropriate relief." (*Id.* at 6.)

Defendants MDOC, Inspector Beckwith, ARUS Springer-Hill, and CO House filed their Motion for Summary Judgment on March 8, 2016. (Docket no. 14.) Defendant CO Robinson joined in the Motion after he was served on September 28, 2016. (Docket nos. 26, 28.) Defendants argue that Plaintiff's claims against the individual defendants in their personal capacities under 42 U.S.C. § 1983 should be dismissed because Plaintiff failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). (Docket no. 14 at 10-16.) They further argue that Plaintiff's claims against MDOC and against the individual defendants in their official capacities should be dismissed under the Eleventh Amendment and principles of sovereign immunity. (*Id.* at 16-17.)

Plaintiff requested and received two extensions to respond to Defendants' Motion for Summary Judgment. (*See* docket no. 15 & May 4, 2016 text order; docket no. 18 & June 24, 2016 text order). The second extension expressly provides that, "NO FURTHER EXTENSIONS

---

[3] His Complaint provides, "Plaintiff brings this action against the Michigan Department of Corrections under Michigan Law MCL 691.1407 Government Tort Liability Act . . . and is seeking only injunctive relief for misinterpretation of the intent of the Prison Rape Elimination Act . . . , and for gross negligence in failing to enact and enforce the statute on it's [sic] effective date." (Docket no. 1 at 5.) In the "Relief Requested" section, Plaintiff specifies that he seeks permanent injunctive relief "from further refusal(s) to change room assignments using [Prison Rape Elimination Act] Classifications." (*Id.* at 6.)

4

WILL BE GRANTED." Nevertheless, on July 20, 2016, Plaintiff requested additional time to respond through his Motion to Stay Proceedings Pending Discovery. (Docket no. 20.)

**B. Governing Law**

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most

5

favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike Cty. Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C. Analysis**

**1. Defendants' Motion for Summary Judgment [14]**

*i. Federal claims*

Plaintiff asserts claims under 42 U.S.C. § 1983 against the individual defendants in their official and personal capacities. (Docket no. 1 at 1, 5-6.) He seeks "punitive, declaratory and compensatory damages in excess of $50,000," plus "any other appropriate relief." (Docket no. 1 at 6.)

The Eleventh Amendment bars suits for money damages against state employees sued in their official capacity. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). Therefore, Plaintiff cannot prevail on his claims for monetary damages against Defendants in their official capacities. Defendants are entitled to summary judgment on these claims.

As for the claims against Defendants in their personal capacities, Defendants contend they are entitled to summary judgment because the undisputed facts show that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. (Docket no. 14 at 10-16.) The PLRA requires that a prisoner exhaust all administrative remedies before filing a section 1983 action. Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules. *Jones v. Bock*,

6

549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (citation omitted).

MDOC's administrative policies (*see* docket no. 14-2) require a prisoner to file a Step I grievance within five days of attempting to informally resolve the grievable issue with prison staff. MDOC Policy Directive 03.02.130(V). The grievance must include information regarding the facts of the issue being grieved (i.e., who, what when, where, why, how), and the dates, times, places, and names of the individuals involved. MDOC Policy Directive 03.02.130(R). MDOC is required to respond within fifteen business days, unless an extension is granted. MDOC Policy Directive 03.02.130(X). If the prisoner is dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, within ten business days of receipt of the response or, if no response is received, "within ten business days after the date the response was due." MDOC Policy Directive 03.02.130(BB). A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . , to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due." MDOC Policy Directive 03.02.130(FF). A prisoner's administrative remedies are exhausted once his complaints have been grieved "through all three steps of the grievance process in compliance with [the] policy." MDOC Policy Directive 03.02.130(B).

In support of their position, Defendants attach a copy of Plaintiff's grievance and appeals related to the incidents at issue in this lawsuit. (Docket no. 14-3.) Plaintiff completed his Step I

grievance on January 15, 2015. (*Id.* at 8.) In it, Plaintiff describes how he was threatened and assaulted by his former cellmate from January through May 2013, and how his complaints to Defendants went unanswered. (*Id.*) This grievance, filed two years after the incidents took place, was rejected as untimely. (*Id.* at 9.) The Step I determination was affirmed at Step II and III. (*Id.* at 5, 7). Defendants also attach a copy of Plaintiff's Step III Grievance Report, which shows that Plaintiff did not file any other Step III appeals regarding the incidents at issue in this lawsuit. (Docket no. 14-3 at 2-4).[4]

The evidence establishes that Plaintiff failed to comply with the applicable deadlines for filing a Step I grievance, and therefore did not properly exhaust his administrative remedies before filing this lawsuit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Defendants' Motion should therefore also be granted with regard to the § 1983 claims asserted against them in their personal capacities.

### *ii. State law claims*

Plaintiff also asserts claims against Defendants under the Michigan GTLA. Defendants do not specifically address these state law claims in the Motion.

Nevertheless, as discussed above, Plaintiff's federal claims against the individual defendants in their official capacities should be dismissed under the Eleventh Amendment and

---

[4] The undersigned notes that in his Complaint, Plaintiff alleges that he filed a Step I grievance against Defendant CO Robinson in March 2013, but that he "was never interviewed" and never "received a reply." (Docket no. 1 at 3.) Plaintiff does not, however, attach any proof that he filed the grievance; nor does he contest the accuracy of the Step III Report. The Step III Report establishes that, even if he did file a Step I grievance in March 2013, he did not attempt to appeal it through all steps of the administrative process. Plaintiff was required to appeal the denial of his Step I grievance even if he did not receive a response from MDOC. *See* MDOC Policy Directive 03.02.130(FF) (prisoner required to file Step II appeal within ten days of receiving MDOC's response to Step I grievance, or "if no response was received, within ten days after the date the response was due").

principles of sovereign immunity. Plaintiff's federal claims against the individual defendants in their personal capacities should be dismissed due to Plaintiff's failure to exhaust his administrative remedies. No other federal claims remain. Accordingly, the court should decline to exercise supplemental jurisdiction over Plaintiff's state-law GTLA claims against Defendant MDOC pursuant to 28 U.S.C. § 1367(c)(3). *See Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.").

### 2. Plaintiff's Motion to Stay Proceedings Pending Discovery [20]

Additionally, as noted above, Plaintiff has filed a Motion to Stay Proceedings Pending Discovery. (Docket no. 20.) He requests additional time apparently to perform legal research and to obtain copies of a police report, a "medical report," and "the Plea report." (*Id.* at 1-2.) None of the discovery Plaintiff seeks will change the fact that Plaintiff's claims are barred by the Eleventh Amendment and by his failure to exhaust his administrative remedies under the PLRA. As for the legal research, Plaintiff has been given two extensions already. (*See* docket no. 15 & May 4, 2016 text order; docket no. 18 & June 24, 2016 text order). In his first request for an extension, Plaintiff asked for an additional 60 days and was given 57 days from the date of the request.[5] (*See* docket no. 15; May 5, 2016 text order.) In his second request, Plaintiff asked for another 60 days and was given 25. (*See* docket no. 18; June 24, 2016 text order.) In granting the second extension, the undersigned expressly ordered that, "NO FURTHER EXTENSIONS WILL BE GRANTED." (June 24, 2016 text order.) Even considering the fact that Plaintiff is

---

[5] This request (docket no. 15) was filed approximately 50 days after Defendants' Motion for Summary Judgment was filed, and therefore was itself untimely. *See* E.D. Mich. LR 7.1(e)(1)(B) ("A response to a dispositive motion must be filed within 21 days after service of the motion.").

proceeding *pro se*, no further extensions are warranted, and Plaintiff's Motion to Stay Proceedings (docket no. 20) should be denied.

### D. Conclusion

For the reasons stated herein, it is recommended that Defendants' Motions for Summary Judgment (docket nos. 14, 28) be **GRANTED**, and Plaintiff's Motion to Stay Proceedings Pending Discovery (docket no. 20) be **DENIED**. Therefore, it is recommended that this matter be dismissed in its entirety.

## III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must

specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  November 15, 2016          s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  November 15, 2016          s/ Lisa C. Bartlett
                                   Case Manager